# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11059

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GUADALUPE CASTRO,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, HAYNES, and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from a district court's denial of a mitigating role adjustment under U.S. Sentencing Guideline § 3B1.2. Because the court's analysis was not clearly erroneous, we AFFIRM.

I.

On April 27, 2015, Guadalupe Castro and Cynthia Uribe were arrested for transporting six bricks of heroin weighing 5,992 grams in their vehicle, which Castro was driving. In post-arrest interviews, Castro and Uribe admitted to transporting narcotics for a drug trafficking organization ("DTO"). They confessed that, on at least two prior occasions, they had transported

No. 15-11059

heroin from El Paso to the Dallas/Fort Worth area, receiving $2,000 each per trip. They also admitted to transporting heroin at least once to Albuquerque, New Mexico, receiving $1,000 each for that trip.

On May 13, 2015, a federal grand jury charged Castro with one count of conspiracy to possess with intent to distribute a controlled substance. Castro pled guilty on June 26, 2015.

During pre-sentencing, Probation did not recommend a mitigating role adjustment under § 3B1.2 in Castro's Presentence Investigation Report ("PSR"). Despite Castro's objection, in the PSR's Addendum, Probation maintained that Castro was not entitled to a § 3B1.2 adjustment, stating that:

> Using the current 2014 Sentencing Guidelines, [Castro] does not qualify for a mitigating role reduction based on her participation and involvement in the conspiracy. . . . [T]he Fifth Circuit held that the defendant must be 'peripheral to the advancement of criminal activity.' As a courier who committed drug-trafficking crimes on more than one occasion, the defendant is not peripheral to the advancement of criminal activity. In fact, a courier plays an integral role in moving narcotics north from Mexico, further into the United States.

The district court reviewed, among other sentencing items, the PSR, Addendum, and the arguments on Castro's objection that she was entitled to a mitigating role adjustment. And, in a pre-sentencing order, it tentatively concluded that Castro's objection was without merit.

At sentencing on October 9, 2015, the district court again denied Castro's objection, explaining that it was "not persuaded that the defendant ha[d] carried the defendant's burden to prove the lower participant category." The court then adopted the PSR's and Addendum's factual findings and conclusions as its own, as well as those expressed from the bench during the sentencing

2

No. 15-11059

hearing. And the court sentenced Castro to sixty months of imprisonment, supervised release for two years, and a special assessment of $100.[1]

Castro has timely appealed. She asks this Court to vacate the district court's judgment and remand for resentencing because: (1) the district court committed clear error by adopting Probation's interpretation of § 3B1.2, which Amendment 794 clarifies is the wrong standard because it focuses on the integral nature of Castro's role in the drug conspiracy; and (2) the court's error was not harmless.

## II.

The parties dispute whether Amendment 794 is retroactively applicable, which depends on whether the Amendment is substantive or clarifying. But we find it unnecessary to decide this question because we will treat the Amendment as if it were retroactively applicable, which will show that Castro does not benefit from the Amendment.[2] Thus, the issue before us is whether the district court clearly erred by denying Castro a mitigating role adjustment under § 3B1.2 as modified by Amendment 794.

---

[1] Castro and Uribe fully cooperated with law enforcement. They described the process of getting heroin into the United States and returning money to Mexico. They also identified stash houses, the source of the heroin in Mexico, the source's house in Mexico, and individuals they delivered heroin to in North Texas and New Mexico. Consequently, the court departed twenty-seven months downward from the guideline range based on the Government's 5K1.1 motion.

[2] We recognize that the Ninth and Eleventh Circuits have held that Amendment 794 is a clarifying amendment. *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016); *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015). But the First Circuit and other panels of this Court have declined to decide whether the Amendment is clarifying or substantive for the same reason that we do here: the defendant could not prevail, even if the Amendment were retroactively applicable. *United States v. Cumby*, No. 15-10665, slip op. at 6 (5th Cir. July 7, 2016) (unpublished and sealed); *United States v. Gomez-Valle*, 828 F.3d 324, 331 (5th Cir. 2016); *United States v. Morosco*, 822 F.3d 1, 24 (1st Cir. 2016).

No. 15-11059

A.

It is necessary to describe § 3B1.2 and Amendment 794's impact on it before considering whether the district court erred in its applica-tion of § 3B1.2. When Castro was sentenced, the 2014 Sentencing Guidelines were in effect. Section 3B1.2 provided:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>> (a) If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.
>> (b) if the defendant was a minor participant in any criminal activity, decrease by **2** levels.
> In cases falling between (a) and (b), decrease by **3** levels.

The 2014 commentary explained that the decision to apply an adjustment is "heavily dependent on the facts" and "based on the totality of the circumstances." U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 cmt. n.3(C) (U.S. SENTENCING COMM'N 2014) [hereinafter 2014 MANUAL]. But a "range of adjustments" is available for a defendant who "plays a part in committing the offense that makes him *substantially less culpable than the average participant*." *Id.* at n.3(A) (emphasis added). A "minimal participant" is a defendant who is "plainly among the least culpable of those involved in the conduct of a group." *Id.* at n.4. A "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." *Id.* By contrast, a "minor participant" is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* at n.5.

When Castro was sentenced, Amendment 794 was not yet effective. Sentencing Guidelines for United States Courts, 80 Fed. Reg. 25,782, 25,782 (May 5, 2015) (stating that Amendment 794 was effective on November 1, 2015). Prompted by a study that found that § 3B1.2 "is applied inconsistently

and more sparingly than the Commission intended," the Sentencing Commission passed Amendment 794 to resolve "a circuit conflict" and "provide[] additional guidance . . . in determining whether a mitigating role adjustment applies." U.S. SENTENCING GUIDELINES MANUAL: SUPPLEMENT TO APPENDIX C amend. 794, at 117 (U.S. SENTENCING COMM'N 2015) [hereinafter 2015 MANUAL]. Amendment 794 "left the text of § 3B1.2 unchanged but made various revisions to the commentary." *United States v. Gomez-Valle*, 828 F.3d 324, 328 (5th Cir. 2016).

Four revisions are important here. First, the Commission specified that the "average participant" inquiry requires courts to compare the defendant "with the other participants 'in the criminal activity.'" 2015 MANUAL, amend. 794, at 117. Second, the Commission explained that "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity *is not determinative*. Such a defendant may receive an adjustment . . . if he or she is substantially less culpable than the average participant in the criminal activity." *Id.* at 116 (emphasis added). Third, the Commission added a "non-exhaustive list of factors for [courts] to consider in determining whether to apply a[n] . . . adjustment and, if so, the amount of the adjustment." *Id.* at 118.[3] Finally, the Commission stated that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to

---

[3] The factors are as follows: (1) "the degree to which the defendant understood the scope and structure of the criminal activity"; (2) "the degree to which the defendant participated in planning or organizing the criminal activity"; (3) "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority"; (4) "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts"; and (5) "the degree to which the defendant stood to benefit from the criminal activity." *Id.* at 116.

perform certain tasks should be considered for an adjustment under this guideline." *Id.* at 116.

### B.

We now turn to the crux of this appeal: whether the district court clearly erred by not granting Castro a mitigating role adjustment under § 3B1.2 as modified by Amendment 794, assuming *arguendo* that Amendment 794 applies. "Whether [a defendant] was a minor or minimal participant is a factual determination that [we] review for clear error. A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005) (citations omitted).

Castro argues that the district court erred by adopting the Addendum, which contained Probation's interpretation of § 3B1.2. The Addendum, Castro claims, did not consider Amendment 794's factors or compare her to others and incorrectly focused on whether she played an integral role in the offense—a factor that was *never* part of the analysis. Moreover, she played a lesser role in the drug conspiracy than others in the DTO.

The Government counters that Castro has not demonstrated clear error. The court did not solely base its decision on the Addendum. It also considered Castro's arguments based on the factors outlined in Amendment 794, her conduct, the benefit she received for her involvement, the conduct of her co-participants, and her knowledge of the DTO, which supported a Section 5K1.1 downward departure. The court denied the reduction because it simply was not persuaded that Castro was substantially less culpable than the average participant.

We agree with the Government that the district court did not clearly err in denying Castro the mitigating role adjustment. "Amendment 794 does not provide an affirmative right to a § 3B1.2 reduction to every actor *but* the

criminal mastermind." *Gomez-Valle*, 828 F.3d at 331 (emphasis in original). Castro could "be a courier without being substantially less culpable than the average participant." *E.g.*, *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989). And Castro bore "the burden of proving by a preponderance of the evidence that the adjustment [was] warranted." *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001).

The district court's conclusion that Castro did not meet her burden is plausible in the light of the whole record. First, the determination of whether Castro was "integral" to the offense is still part of § 3B1.2's analysis. Amendment 794's commentary states that a court should not refuse an adjustment "solely because" a defendant was "'integral' or 'indispensable' to the commission of the offense." 2015 MANUAL, amend. 794, at 118. Because that fact "is not determinative," judges should also ponder whether a defendant is "substantially less culpable than the average participant in the criminal activity." *Id.* at 116. In short, a court does not err by taking into account a defendant's integral role in an offense when deciding whether she is entitled to a § 3B1.2 adjustment, as long as her role is not the sole or determinative factor in its decision.

By adopting the Addendum's conclusions, the district court indicated that Castro's integral role in the drug trafficking conspiracy was a factor in its decision to deny the adjustment, but the record does not support Castro's contention that this was the determinative or sole factor. The court had before it the evidence presented at the sentencing hearing, the PSR, the Addendum, and the parties' arguments over Castro's objections to the PSR and Addendum. This evidence detailed Castro's conduct in the conspiracy, as well as the

conduct of other participants in the DTO,[4] including that of her co-transporter Uribe (who received the same sentence as Castro). It also provided the court with Amendment 794's relevant language and comparative analysis factors and explained how they applied to Castro. The pre-sentencing order and holding at sentencing demonstrate that the court considered Castro's arguments: it simply found them without merit and was not persuaded that Castro had carried her burden of proof.[5]

Finally, the district court's rulings highlight the fundamental flaw in Castro's position: Castro bore the burden of proof, but she did not make the showing that § 3B1.2 requires. As the commentary makes clear, § 3B1.2's basic inquiry is whether a defendant "play[ed] a part in committing the offense that makes [her] substantially less culpable than the average participant" "in the criminal activity." 2015 MANUAL, amend. 794, at 116–17; 2014 MANUAL, § 3B1.2 cmt. n.3(A). Contrary to her assertion, Castro is not entitled to a § 3B1.2 adjustment just because she played a lesser role than others in the criminal activity. Castro is only entitled to a mitigating role adjustment if she showed by a preponderance of the evidence: (1) the culpability of the average

---

[4] The district court was aware of, among others, the individuals: (1) who loaded and unloaded the drugs into Castro and Uribe's vehicle on multiple trips; (2) who took Castro and Uribe to a dealership to buy the vehicle they used to transport drugs; (3) who directed them to the intended recipients of the drugs; (4) who was the source of the heroin in Mexico; and (5) who they delivered heroin to in North Texas and New Mexico.

[5] The court did not err by not expressly weighing Amendment 794's factors. "[T]he Commission expressly stated that [the factors] are nonexclusive, and they are only factors." *United States v. Torres-Hernandez*, No. 15-41654, 2016 WL 7118458, at *5 (5th Cir. Dec. 6, 2016). Moreover, the district court had enough evidence in the record before it to weigh the Amendment's factors. And because the parties spent significant time briefing the issue, "we can infer the judge considered and rejected defense counsel's points before selecting the sentence." *Morosco*, 822 F.3d at 24.

participant in the criminal activity;[6] and (2) that she was substantially less culpable than that participant.

Castro did not make either showing. She never showed the culpability of the average participant in the drug trafficking conspiracy. And she certainly did not show that she was *substantially* less culpable than the average participant, even assuming *arguendo* that the "average participant" was other drivers in the DTO or other participants in the DTO who were in possession of heroin with the intent to distribute. This Court has repeatedly explained that "[i]t is improper for a court to award a [§ 3B1.2] adjustment simply because a defendant does less than the other participants[:] . . . the defendant must do enough less so that [s]he at best was peripheral to the advancement of the illicit activity." *E.g.*, *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991). Castro, together with Uribe, helped acquire license plates for a vehicle used to transport drugs, traveled thousands of miles on multiple trips for the DTO, delivered kilogram amounts of heroin for the DTO, and repeatedly took drug proceeds back to the DTO. Given this and the other information the court had before it, it is certainly plausible that Castro was not substantially less culpable than the average participant. *See Torres-Hernandez*, 2016 WL 7118458, at *5. Consequently, the court did not clearly err in denying Castro a § 3B1.2 adjustment.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6] The criminal activity is the crime with which Castro was charged (conspiracy to possess with intent to distribute a controlled substance).

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Because I would conclude that Amendment 794 is clarifying and that the district court clearly erred in denying the mitigating role adjustment, I respectfully dissent.

U.S.S.G. §3B1.2 provides that:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>     (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>     (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. §3B1.2.

The commentary to 3B1.2 provides that there are a range of adjustments available for a defendant who plays a part in an offense making him "substantially less culpable than the average participant." An example is "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to *transporting* or storing drugs and who is accountable under 1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." U.S.S.G. § 3B1.2, cmt. n.3(A) (emphasis added). A "minimal participant" is a defendant who is "plainly among the least culpable of those involved in the conduct of a group" and a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." U.S.S.G. § 3B1.2, cmt. n.3(A), 4. Whereas a "minor participant" is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5.

No. 15-11059

The commentary to 3B1.2 was amended after Castro was sentenced. Amendment 794, which went into effect on November 1, 2015 states that it:

> [P]rovides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies. Specifically, it addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances. It also provides a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment.

U.S.S.G. Manual, supp. to app. C, amend. 794 at 116, 80 Fed. Reg. 25,782-01, 25,792-93, 2015 WL 1968941 (May 5, 2015). The amendment added to Note 3(C) the following:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2, cmt. n.3(C).

While the issue of whether Amendment 794 is clarifying or substantive has been previously presented, this court has declined to address it, as does the majority here.  *See United States v. Gomez-Valle*, 828 F.3d 324, 330-31 (5th Cir. 2016) ("We conclude that it is unnecessary to resolve whether Amendment 794 was a substantive change or instead only clarifying because even if it were applied retroactively, it would not affect Gomez-Valle's sentence."; "[A]ssuming, without deciding, that Amendment 794 is 'clarifying' and should be considered on appeal, it does not affect the outcome in this case.").  *See also United States v. Cumby*, No. 15-10665, slip op. at 6 (5th Cir. July 7, 2016) (unpublished and sealed).  However, the Ninth and Eleventh circuits have already held that this amendment is clarifying and, thus, applies retroactively. *See United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016); *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015).

Regardless of whether the Commission explicitly stated that the amendment is clarifying, the language of the amendment is clearly intended to be clarifying and merely confirms the result [a court] would reach apart from it."  *United States v. Huff*, 370 F.3d 454, 466 & n.19 (5th Cir. 2004).  Further, the only altered language is in the commentary – not in the guideline itself. *Id*.  With regard to the amendment not being listed as applying retroactively, this court has allowed amendments that conflict with its prior interpretation to apply retroactively.  *United States v. Palacios*, 756 F.3d 325, 326 (5th Cir. 2014); *United States v. Fitzhugh*, 954 F.2d 253, 255 (5th Cir. 1992).  Thus, I would conclude that the amendment is clarifying.

The majority concludes that, even if the amendment is clarifying, the district court's decision that Castro was not entitled to a mitigating role reduction was not clearly erroneous.  I disagree.  Probation incorrectly focused

on whether Castro played an integral role, which is not the determining factor. ("In fact, a courier plays an integral role in moving narcotics north from Mexico, further into the United States.")  The district court also adopted the supplemented PSR.  The majority essentially concludes that the district court denied the reduction because it was not persuaded that Castro was not integral.  In other words, the district court appears to have "solely" based its decision on Castro's integral role.  That is error.

Additionally, the record indicates that Castro was indeed "substantially less culpable."  The fact that Castro and Uribe received the same sentence is of no significance.  Uribe's case or whether she is entitled to the adjustment is not before this court.  We are only concerned with the actual conduct of the various parties in the conspiracy.  Even as between Castro and Uribe, Castro is less culpable.  Castro was driving Uribe's vehicle – they were merely splitting the driving time.  Other individuals loaded and unloaded the drugs. The $697 was located in Uribe's purse.  Uribe admitted that she had transported narcotics multiple times, but was not always accompanied by Castro.  Neither Castro nor Uribe appears to have understood the scope of the activity, i.e., they both thought they were transporting cocaine.  There is no indication that Castro participated in planning or organizing the distribution, that she had any decision-making authority, or that she had any proprietary interest – she was merely being paid a flat fee to perform a task.  The commentary explicitly provides that those are all factors to be considered in determining whether a mitigating role adjustment should apply.

Castro is clearly less culpable than the suppliers or the importers or the people who accepted delivery of the drugs or arranged all of the details or paid them, or the individual who picked her and Uribe up, secured a hotel room for them, purchased a new car registered to Uribe and arranged for new tags when

the car broke down. Those individuals would be the average participants and these facts indicate that Castro was substantially less culpable than the average participants.[1]  Further, Castro, who was a flat fee driver, did not have a "proprietary interest," was "simply being paid to perform certain tasks" and was "peripheral to the advancement of the illicit activity." *See United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991); *see also* U.S.S.G. § 3B1.2, cmt. n.3(A),(C).  Clearly, Castro should be considered for an adjustment even if her role as a driver was essential or indispensable to the criminal activity.

Accordingly, I would conclude that the district court erred in denying the adjustment.  Moreover, the district court also had the option of granting Castro a minimal participant adjustment or an adjustment as a participant whose culpability fell between that of a minor and a minimal participant.  With a minor-role adjustment and based on U.S.S.G. § 2d1.1(a)(5), Castro's guideline range would have fallen from 87-108 months to 51-63 months.  With a minimal participant adjustment, the range would fall to 41-51 months.  Thus, the error was not harmless.

For these reasons, I would reverse and remand for resentencing. Therefore, I respectfully dissent.

---

[1] The majority states that Castro did not show that she was less culpable than the "average participant, even assuming *arguendo* that the 'average participant' was other drivers . . . ."  However, it is unclear as to what other drivers the majority is referring other than Uribe.  Also, the record does not support the majority's assertion that Castro helped acquired license plates for the DTO's vehicle.  The vehicle was registered to Uribe and the plates were picked up from an individual in Fort Worth.  Additionally, Castro did not know the amounts of currency transported on return trips.